# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Case No. 25-2785

---

THUMBTACK INC.,

Defendant – Appellant,

v.

AHMAD WILLIAMS,

Plaintiff – Appellee

---

On Appeal from Order of the
United States District Court, Eastern District of Pennsylvania

---

## THUMBTACK'S OPENING BRIEF IN SUPPORT OF ITS APPEAL

---

**Defendant–Appellant**
By Its Attorneys,
Benesch, Friedlander, Coplan &
Aronoff LLP

| | | |
|---|---|---|
| Johanes Maliza | Noelle Torrice | Meghan Golden |
| 127 Public Square, Suite 4900 | 1313 North Market Street, Suite 1201 | 71 South Wacker Drive Suite 1600 |
| Cleveland, OH 44144 | Wilmington, DE 19801 | Chicago, IL 60606 |
| (216) 363-1503 | (302) 442 7056 | (312) 624-6378 |
| jmaliza@beneschlaw.com | ntorrice@beneschlaw.com | mgolden@beneschlaw.com |

**Date:** November 24, 2025

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Civil Procedure and Third Circuit Rule 26.1, the undersigned certifies that there is no publicly traded company or corporation with an interest in the outcome of the case that has not already been disclosed to this Court.

# Table of Contents

INTRODUCTION ................................................................................ 1

STATEMENT OF JURISDICTION ................................................... 3

ISSUES PRESENTED FOR REVIEW ............................................... 4

STATEMENT OF RELATED CASES AND PROCEEDINGS........................ 5

STATEMENT OF THE CASE ............................................................ 9

    I.  Relevant Facts.......................................................................... 9

      A. Williams Used Thumbtack's Platform to Hire A-G Eagle
Construction LLC............................................................. 9

      B. Williams Assented to Arbitration by Adopting the November 2022
Terms of Use, which Included an Arbitration Provision................ 9

      C. The November 2022 Terms of Use Were in Effect at the Time
Williams' Dispute Arose. ................................................14

    II. Procedural History of this Lawsuit.......................................15

    III. Ruling Presented for Review ................................................19

SUMMARY OF ARGUMENT .........................................................19

ARGUMENT .................................................................................23

    I.  Legal Standards......................................................................23

      A. Standard of Review..........................................................23

        1. Application of Rule 56 to Determine a Motion to Compel
Arbitration .....................................................................24

        2. Parties Are Entitled to Respond to New Facts Raised in an
Opposition .....................................................................26

    II. Analysis.................................................................................27

      A. There Are No Genuine Disputes of Material Fact that Preclude
Compelling Arbitration....................................................28

        1. The Court Must Disregard the Williams Declarations under the
Sham Affidavit Doctrine. ................................................28

        2. Even if both Williams Declarations Are Considered, there Is still
No Genuine Dispute of Material Fact.........................................34

        3. The November 2022 TOU Includes an Enforceable Arbitration
Agreement. ....................................................................40

        4. This Dispute Falls within the Scope of the Arbitration
Agreement. ....................................................................42

      B. The District Court Erred in Ordering Discovery. ...........................44

C.  Thumbtack Should Have Been Afforded an Opportunity to
Respond to the Facts Williams Raised for the First Time in his
Opposition to the Motion to Compel Arbitration............................47

CONCLUSION..................................................................................................51

# Table of Authorities

**Cases**

*Alston v. Forsyth,*
    379 F. App'x 126 (3d Cir. 2010) .........................................................50

*Am. Boat Co. v. Unknown Sunken Barge,*
    418 F.3d 910 (8th Cir. 2005) ...........................................................38

*Am. Fam. Life Assur. Co. of Columbus v. Biles,*
    714 F.3d 887 (5th Cir. 2013) ...........................................................44

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).................................................................24, 35

*Baer v. Chase,*
    392 F.3d 609 (3d Cir. 2004)...........................................................25

*Ball v. Kotter,*
    723 F.3d 813 (7th Cir. 2013) ..........................................................38

*Bayer AG v. Schein Pharm., Inc.,*
    129 F. Supp. 2d 705 (D.N.J. 2001).................................................27

*Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.,*
    215 F.3d 219 (2d Cir. 2000)...........................................................27

*Caimano v. H&R Block,*
    2024 WL 3295589 (E.D. Pa. July 3, 2024) ...................................37

*Charlton v. Paramus Bd. of Educ.,*
    25 F.3d 194 (3d Cir. 1994)............................................................24

*Clark v. Modern Grp. Ltd.,*
    9 F.3d 321 (3d Cir. 1993) ..............................................................24

*Coinbase, Inc. v. Bielski,* 599 U.S. 736 (2023) ...................................46

*Cornelius v. CVS Pharmacy Inc.,*
    133 F.4th 240 (3d Cir. 2025) .........................................................26

*Daubert v. NRA Grp., LLC,*
    861 F.3d 382 (3d Cir. 2017)...................................................25, 32

*Daubert,* 861 F.3d at 391–92 ..............................................................33

*Dicent v. Kaplan Univ.,*
   758 F. App'x 311 (3d Cir. 2019) ..................................................33

*Geise v. Nationwide Life & Annuity Co. of Am.,*
   939 A.2d 409 (Pa. Super. 2007) ..................................................38

*Glick v. White Motor Co.,*
   458 F.2d 1287 (3d Cir. 1962) .....................................................29

*Gov't Emps. Ins. Co. v. Mount Prospect Ctr., P.A.,*
   98 F.4th 463 (3d Cir. 2024) .......................................................34

*Guidotti v. Legal Helpers Debt Resolution, LLC,*
   716 F.3d 764 (3d Cir. 2013) ................................................ passim

*Hoffman v. Compassus,*
   2019 WL 1791413 (E.D. Pa. Apr. 23, 2019) ................................41

*In re Am. Biomaterials Corp.,*
   954 F.2d 919 (3d Cir. 1992) .......................................................11

*In re CitX Corp., Inc.,*
   448 F.3d 672 (3d Cir. 2006) .......................................................32

*Jackson v. Cintas Corp.,*
   425 F.3d 1313 (11th Cir. 2005) ..................................................44

*Jiminez v. All Am. Rathskeller, Inc.,*
   503 F.3d 247 (3d Cir. 2007) .......................................................25

*Jiminez, 503 F.3d at 252* ...............................................................33

*John Hancock Mut. Life Ins. Co. v. Olick,*
   151 F.3d 132 (3d Cir. 1998) .......................................................34

*Judon v. Travelers Prop. Cas. Co. of Am.,*
   773 F.3d 495 (3d Cir. 2014) .......................................................29

*Kennell v. Gates,*
   215 F.3d 829 (8th Cir. 2000) .....................................................38

*Landy v. Fed. Deposit Ins. Corp.,*
   486 F.2d 139 (3d Cir. 1973) .......................................................11

*Morales v. Sun Constructors, Inc.,*
   541 F.3d 218 (3d Cir. 2008) .......................................................39

*Orsatti v. N.J. State Police,*
 71 F.3d 480 (3d Cir. 1995)......................................................................25

*P.B. Burke Corp. v. United States,*
 277 F.3d 1346 (Fed. Cir. 2002)..............................................................27

*PaineWebber v. Harmann,*
 921 F.3d 507 (3d Cir. 1990).....................................................................34

*Paladino v. Newsome,* 885 F.3d 203, 208 (3d Cir. 2018) ....................................33

*Quilloin v. Tenet HealthSystem Phila., Inc.,*
 673 F.3d 221 (3d Cir. 2012).....................................................................23

*Reese Turbin et al. v. Thumbtack Inc.,* 2025 WL 3013972 (N.D. Cal. Oct. 28,
 2025)..............................................................................................11

*Singh v. Uber Techs Inc.,*
 939 F.3d 210 (3d Cir. 2019).....................................................................23

*Smith v. Johnson,*
 862 F. Supp. 1287 (M.D. Pa. 1994)...........................................................27

*Spriggs v. City of Harrisburg,*
 679 F. Supp. 3d 144 (M.D. Pa. 2023) ........................................................27

*St. Surin v. V.I. Daily News,*
 21 F.3d 1309 (3d Cir. 1994).....................................................................24

*Stephenson v. AT&T Servs., Inc.,*
 2021 WL 3603322 (E.D. Pa. Aug. 13, 2021)................................................38

*White v. Sunoco, Inc.,*
 870 F.3d 257 (3d Cir. 2017).....................................................................23

*Wolff v. Westwood Management, LLC,*
 558 F.3d 517 (D.C. Cir. 2009) .................................................................44

*Young v. Experian Info. Solutions, Inc.,*
 119 F.4th 314 (3d Cir. 2024) ...................................................................44

**Statutes**

21 Pa. Stat. § 82 ...................................................................................39

28 U.S.C. § 1332 ................................................................................... 3

9 U.S.C. § 16(a)..................................................................................... 3

**Other Authorities**

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1366 (3d ed. 2025) ..................................................................................26

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................23, 26, 48

Fed. R. Civ. P. 12(d) .............................................................23, 26, 48

Fed. R. Civ. P. 56 ......................................................................4, 19, 21

Fed. R. Civ. P. 56(a) .......................................................................24

Fed. R. Civ. P. 56(c)(1)(A) .............................................................25

## INTRODUCTION

Plaintiff-Appellee Ahmad Williams ("Williams") wrote in his Complaint that "[a] binding agreement was formed between Defendant-Appellant Thumbtack, Inc. ("Thumbtack") and Plaintiff when he agreed to the platform's service terms by selecting and hiring a contractor through their interface." This entire appeal, and whether the district court should compel arbitration as Thumbtack requests, turns on whether Williams will be held to his statement. Thumbtack is certain that he should be, that the "binding agreement" should be enforced, and that the parties should proceed to arbitration without delay.

Williams disagrees. First, he disagrees with his own words. In opposition to the Motion to Compel Arbitration, Williams disclaimed any contract with Thumbtack, disclaimed ever having used Thumbtack, and basically disclaimed even being the actual plaintiff on whose behalf he brought this pro se lawsuit—he designated his wife as the actual plaintiff. And in disagreeing with himself, he also disagrees with Thumbtack on the point that he should be held to his words or to the contract he agreed to when he used the platform to hire a roofer.

The district court held that there are "disputes of fact" and "genuine issues," but only cited Williams' internal contradictions in the order. The district court then incorrectly ordered discovery to untangle Williams' contradictions, and in so doing deprived the parties of the efficiency benefit for which Thumbtack and Williams bargained.

The district court reached its decision without allowing Thumbtack to respond to Williams, even though Williams' self-contradictions and discovery request arose for the first time in his opposition to the Motion to Compel Arbitration. Further, the district court's explanation was less-than-threadbare. It was a flawed process, with an insufficient basis for the result.

A more robust process would have allowed this to be resolved below. The district court stripped Thumbtack of the opportunity to argue that none of Wiliams' disputes appear genuine. Instead, his "disputes" are both opposite to his prior pleadings and newly raised for purposes of opposing arbitration. They lack explanation for his contradictions. And they do not even concern material facts: He says he has never used Thumbtack, rather it was his wife who created and used a Thumbtack account. And his wife says she does not remember receiving notice of the applicable arbitration agreement. Even if true, she was provided sufficient notice, and Williams

cannot escape the obligations created by the agreement just by saying his wife created an account and agreed to the terms without his permission.

The district court should have allowed Thumbtack to respond to Williams' self-contradictions, should have thoroughly analyzed whether Williams' issues amounted to genuine disputes of any material fact, and should not have permitted discovery without a showing that it was necessary to resolve the Motion to Compel Arbitration. This Court should remand, with instructions to compel arbitration.

## STATEMENT OF JURISDICTION

The district court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff-Appellee is a citizen of Pennsylvania. Thumbtack is a Delaware corporation with its principal place of business in California. Co-defendant A-G Eagle Construction, LLC is a New Jersey company with its principal place of business in New Jersey. Plaintiff-Appellee seeks over $75,000 in damages.

This Court has jurisdiction over this appeal pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a). The district court entered an order denying Thumbtack's Motion to Compel Arbitration on September 4, 2025. Thumbtack filed a Notice of Appeal from that order on September 11, 2025.

**ISSUES PRESENTED FOR REVIEW**

1. Did the district court err in holding that Plaintiff had raised a genuine dispute of material fact regarding the formation of a contract with a binding arbitration clause, where Plaintiff's Complaint alleged "A binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms," and where that contract included a binding arbitration clause?

2. Did the district court err in denying Thumbtack's Motion to Compel Arbitration by failing to assess whether any purportedly disputed facts were the subject of genuine dispute?

3. Did the district court err in denying Thumbtack's Motion to Compel Arbitration by failing to assess whether any purportedly disputed facts were material to the determination of a motion to compel arbitration?

4. Having applied a Rule 56 standard, did the district court err in denying Thumbtack's Motion to Compel Arbitration and granting Plaintiff-Appellee's request for discovery prior to allowing Thumbtack to respond to the matters raised for the first time in opposition to the Motion to Compel Arbitration?

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

This case has not previously been before this Court. Plaintiff-Appellee Ahmad Williams, however, does have at least a dozen cases pending or closed within the last five years in the federal courts around the country:

| | Case Caption | Court | Result / Comment |
|---|---|---|---|
| *1* | *Ahmad Williams v. Experian Information Solutions, Inc.,* No. 23-cv-00918-JFM | U.S. District Court for the Eastern District of Pennsylvania | Dismissed on 12(b)(6) motion, November 6, 2023. |
| 2 | *Ahmad Williams v. Experian Information Solutions, Inc.,* No. 23-3167 | U.S. Court of Appeals for the Third Circuit | Dismissal affirmed, July 3, 2024. |
| 3 | *Ahmad Williams v. Rent 2 Own Trailers, LLC, Gabriel Arguello, Federico Arguello, Natalia Cardova, Ivan Serna, Adriana Chuey, "Vicky," Arguello Insurance Group, Jacobo Arguello, Bianey Cordova, Natalia Ruiz, Nautilus Insurance, Vicky Pirela, Western Security Surplus Insurance, Kay Campbell,* No. 24-354-JFM | U.S. District Court for the Eastern District of Pennsylvania | Dismissed as to Plaintiffs Cordova and Ruiz on December 9, 2024. Transferred to S. D. Texas as to remaining defendants on February 4, 2025. |

| | Case Caption | Court | Result / Comment |
|---|---|---|---|
| 4 | *Ahmad Williams v. Mercedes-Benz USA, Mercedes-Benz Financial, Daimler Trust*, No. 24-932-JFM | U.S. District Court for the Eastern District of Pennsylvania | Dismissed with Prejudice on February 24, 2025 as to Contract, Tort, Consumer Protection, Obstruction of Justice, and Loss of Consortium Claims. FCRA claim in discovery. |
| 5 | *Ahmad Williams and Malaika Williams v. Edwin Onaghise, and Bluefire Insurance Services, Inc.*, No. 24-2510-JFM | U.S. District Court for the Eastern District of Pennsylvania | Transferred to W.D. Texas for lack of jurisdiction on September 12, 2024. Stipulated dismissal on June 9, 2025. |
| 6 | *Ahmad Williams and Malaika Williams v. Edwin Onaghise, and Bluefire Insurance Services, Inc.*, No. 24-1086-SH | U.S. District Court for the Western District of Texas | Dismissed with prejudice by stipulation on June 9, 2025. |
| 7 | *Ahmad Williams v. Experian Information Solutions, Inc., Trans Union, LLC, Equifax Information Services, LLC*, No. 24-2519-JFM | U.S. District Court for the Eastern District of Pennsylvania | Judgment on Pleadings granted in favor of defendants on claims for RICO, Mail Fraud, Wire Fraud, Negligence, Negligent Infliction of Emotional Distress, and Unjust Enrichment claims on March 4, 2025. FCRA and Defamation Claims settled by stipulation on April 21, 2025. |

| | Case Caption | Court | Result / Comment |
|---|---|---|---|
| 8 | *Ahmad Williams and Malaika Williams v. Rent 2 Own Trailers, LLC, Gabriel Arguello, Federico Arguello, Natalia Cardova, Ivan Serna, Adriana Chuey, "Vicky," Arguello Insurance Group, Jacobo Arguello, Bianey Cordova, Natalia Ruiz, Nautilus Insurance, Vicky Pirela, Western Security Surplus Insurance, Kay Campbell*, No. 25-524-DH | U.S. District Court for the Southern District of Texas | Dismissed on July 11, 2025. Motion to Alter or Amend Judgment filed on August 15, 2025, denied on August 19, 2025. |
| 9 | *Ahmad Williams and Malaika Williams v. Rent 2 Own Trailers, LLC, Gabriel Arguello, Federico Arguello, Natalia Cardova, Ivan Serna, Adriana Chuey, "Vicky," Arguello Insurance Group, Jacobo Arguello, Bianey Cordova, Natalia Ruiz, Nautilus Insurance, Vicky Pirela, Western Security Surplus Insurance, Kay Campbell*, No. 25-20352 | U.S. Court of Appeals for the Fifth Circuit | Appeal docketed on August 20, 2025. Case pending. |
| 10 | *Ahmad Williams and Malaika Williams v. Pirelli Tire, LLC*, No. 25-3477-JFM | U.S. District Court for the Eastern District of Pennsylvania | Complaint filed on July 6, 2025. Case Pending. |

| | Case Caption | Court | Result / Comment |
|---|---|---|---|
| 11 | *Ahmad Williams v. American Express Company*, No. 25-4800-JFM | U.S. District Court for the Eastern District of Pennsylvania | Complaint filed on August 19, 2025.  Case Pending. |
| 12 | *Ahmad Williams and Malaika Williams v. Cellco Partnership d/b/a Verizon Wireless*, No. 25-04803-JFM | U.S. District Court for the Eastern District of Pennsylvania | Dismissed on October 8, 2025. |

**STATEMENT OF THE CASE**

**I. Relevant Facts**

    **A. Williams Used Thumbtack's Platform to Hire A-G Eagle Construction LLC.**

Thumbtack is a technology company that provides homeowners with an online platform to connect them with service professionals in their geographic area. App. AA39. Williams is a homeowner who used Thumbtack's platform to hire a roofer. App. AA10 ¶ 8.

To access Thumbtack's platform, a user must first create an account. App. AA56 ¶ 4. Williams used a Thumbtack account under his wife's name, Malaika Williams, to hire co-Defendant A-G Eagle Construction LLC ("A-G Eagle") to perform roof repair services (the "Williams Account"). App. AA 57 ¶¶ 5–6; App. AA9-10. ¶¶ 8–15. Williams specifically pled in his Complaint that "A binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms . . . ." App. AA20 ¶ 37.

    **B. Williams Assented to Arbitration by Adopting the November 2022 Terms of Use, which Included an Arbitration Provision.**

The Williams Account was created on November 19, 2016. App. AA57 ¶ 5. To hire professionals through a Thumbtack account, all Thumbtack

users must agree to the Thumbtack Terms of Use.   App. AA56 ¶ 4.  By the

time the events at issue in this case arose in 2023,  the Terms of Use in effect

were Thumbtack's November 2022 Terms of Use (the "November 2022

TOU").[1] App. AA 57 ¶ 9.  The November 2022 TOU included arbitration

provisions.  *See* App. AA 62, 85-88.

Williams agreed to arbitrate disputes with Thumbtack pursuant to the

November 2022 TOU.  App. AA 43.  On October 6, 2022, Thumbtack sent

every Thumbtack account holder, which included Williams, an e-mail

stating:

> Thumbtack continues to grow and evolve. To keep
> things running smoothly, we're updating our Terms
> of Use on November 7th, 2022. You can currently
> view both the existing and the new Terms of Use
> here.
>
> These updates address a variety of new product
> features we've rolled out recently, including the
> option to pay for projects through Thumbtack,
> Thumbtack Plus, and our home guidance checklist.
> The updates also address feedback we've heard from

---

[1] The November 2022 TOU included materially identical substantive
arbitration provisions to a previous version of the Terms of Use, which were
promulgated in 2018.  Williams disputes that the November 2018 Terms of
Use ever bound him or his wife, but that dispute is not material to whether
Williams was subject to an agreement to arbitrate during the relevant
2023/2024 time period when he had his roof redone. Thumbtack contends
that the 2022 Terms of Use govern this dispute.

> pros and consumers, and make our Terms of Use
> easier to read and understand. Please read the new
> Terms of Use carefully and ensure you understand
> them. By continuing to use Thumbtack after
> November 6th, you are agreeing to the new Terms of
> Use. Thank you for being a loyal Thumbtack user.
> We are excited to continue growing with you.

App. AA 57 ¶¶ 10–11. In the email, as shown above, the blue-colored text

"here" and "Terms of Use" were hyperlinks to the November 2022 TOU.

App. AA 58 ¶ 12. Any user could click on these words, and their internet

browser would direct them to the November 2022 TOU. App. AA58 ¶ 12.

The November 2022 TOU, and the arbitration provisions within, have been

enforced in the Northern District of California, based upon the same method

of delivery and notice to Thumbtack users. *See Reese Turbin et al. v.*

*Thumbtack Inc.*, 2025 WL 3013972 (N.D. Cal. Oct. 28, 2025).[2]

As the email stated, use of Thumbtack's platform after November 6,

2022 was taken as acceptance of the November 2022 TOU. App. AA57 ¶ 10.

---

[2] This Court may take judicial notice of relevant proceedings in other judicial fora subsequent to the Notice of Appeal. *See In re Am. Biomaterials Corp.*, 954 F.2d 919, 922 (3d Cir. 1992) (Appellate court has a right to take judicial notice of new developments not considered by the lower court); *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 151 (3d Cir. 1973)(taking judicial notice of filings in other cases subsequent to the notice of appeal).

A user cannot create a Thumbtack account and use Thumbtack without accepting the Terms of Use.  App. AA57-58 ¶ 10.

The November 2022 TOU included a bold, all-caps notice regarding arbitration at the top of the first page.  App. AA62.  It read:

> **IMPORTANT NOTICE: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.**

App. AA61 (colored text, bold, and capitalization in original).  The bolded words "ARBITRATION AND CLASS ACTION WAIVER" at the top of the November 2022 TOU appeared in blue-colored font and were hyperlinked to the November 2022 TOU.  App. AA57 ¶ 8.  When a user clicked the hyperlink, they were immediately directed to the November 2022 TOU's Arbitration and Class Action Waiver section.  App. AA57 ¶ 8.

In the November 2022 TOU Arbitration and Class Waiver section, the text began with the following header:

**ARBITRATION AND CLASS ACTION WAIVER**

**PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.**

App. AA85. (oversized text, bold font, and capitalization in original).  The Arbitration and Class Action Waiver section then designated binding arbitration as the

> sole means to resolve claims . . . Specifically, all claims arising out of or relating to these Terms or previous versions of these Terms (including the Terms' . . . formation, performance, and the parties' relationship with each other, and/or your use of the Platform . . . .

App. AA85.  This section also included a 30-day opt-out provision, providing Williams thirty days to opt-out of arbitration via e-mail.  App. AA87.  Williams never opted out.  App. AA58 ¶ 13.

The November 2022 TOU expansively incorporated all "any and all" disputes between Thumbtack and Williams:

> This Section is intended to be interpreted broadly and governs any and all disputes between you and Thumbtack, including but not limited to claims arising out of or relating to any aspect of the relationship between you and Thumbtack, whether

based in contract, tort, statute, fraud, misrepresentation or any other legal theory; claims that arose before this Agreement or any prior agreement (including, but not limited to, claims related to advertising); and claims that may arise after the termination of this Agreement. The only disputes excluded from this broad prohibition are the litigation of certain intellectual property and small court claims, as provided below.

App. AA85. It also included a delegation clause giving the arbitrator the right to decide nearly all matters:

The arbitrator, and not any federal, state, or local court or agency, will have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms or the Privacy Policy, including but not limited to any claim that all or any part of these Terms or Privacy Policy is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct. The arbitrator will be empowered to grant whatever relief would be available in a court under law or in equity.

App. AA86.

## C. The November 2022 Terms of Use Were in Effect at the Time Williams' Dispute Arose.

The underlying transaction described in the Complaint occurred around July and August 2023. App. AA9 ¶ 8; App. AA59 ¶ 19. During that time, the November 2022 TOU was in effect. App. AA57 ¶ 9. The November

14

2022 TOU continued in effect at all times relevant to this dispute. App. AA57 ¶ 9.

Around July 3, 2023, Williams used the Williams Account to request a call with "Jimmy" from A-G Eagle about services at 2639 Oakford Street, Philadelphia, PA 19146. App. AA58 ¶ 19; App. AA9 ¶ 8. Ultimately, Williams "retained A-G Eagle through Thumbtack" to repair the roof at 2639 Oakford Street "through the Thumbtack website." App. AA. 9 ¶ 8, AA10 ¶ 15. A-G Eagle performed work on Williams' roof around August 2023. App. AA9 ¶ 8.

On September 9, 2024, about 13 months after A-G Eagle performed roof repairs at Williams' home, Williams contacted A-G Eagle using the Williams Account about an alleged leak in the roof A-G Eagle had repaired. App. AA59 ¶ 21.

## II. Procedural History of this Lawsuit

On July 10, 2025, about 22 months after the home repairs at issue, Williams filed his Complaint in the district court against Thumbtack and A-G Eagle. App. AA7. On August 26, 2025, Thumbtack filed its Motion to Compel Arbitration and Stay Proceedings (the "Motion to Compel Arbitration"). App. AA36.

On September 1, 2025, Williams moved to strike references to other civil cases in which he is involved as well as to his criminal cases and appeals that Thumbtack included in its Motion. *See generally* App. AA120 (denying motion to strike). On September 2, 2025, the district court denied Williams' Motion to Strike and found that there was

> no basis to strike material from briefing . . . [and that the Court would] now turn to resolving the Motion to compel arbitration . . . mindful Thumbtack, Inc. may timely reply compliant with our governing Policies.

App. AA120 ¶ 2.

On September 1, 2025, in a separate filing, Williams opposed Thumbtack's Motion to Compel Arbitration ("Opposition"). App. AA95. Williams also requested discovery in his Opposition.[3] App. AA96. Because the district court subsequently ruled without giving Thumbtack time to file the timely reply the court referenced above, Thumbtack never had an opportunity to oppose this request for discovery.

---

[3] Williams included his request for discovery in his Opposition, as opposed to filing a standalone motion. The district court granted his request for discovery, without permitting opposition from Thumbtack, or making any finding that it was likely to yield evidence of a genuine dispute of material fact.

In his Opposition, Williams cited several "facts" that he created and contended were "genuine disputes" of "material fact" sufficient to preclude compelling arbitration. Among other assertions, Williams denied that he (or his wife) accepted the November 2022 TOU and denied that he (or his wife) received an email from Thumbtack regarding Thumbtack's roll out of the November 2022 TOU. App. AA96. Williams also claimed that Thumbtack's Motion to Compel Arbitration lacked several relevant facts. App. AA96. In support, Williams attached declarations from himself and his wife alleging new facts that did not appear in his Complaint. App. AA115 ("Ahmad Williams Declaration") and App. AA117 ("Malaika Williams Declaration") (collectively, the "Williams Declarations").

As the district court held, the Ahmad Williams Declaration conflicted with factual assertions in the Complaint. App. AA5-6. Though Williams pled in his Complaint that he ". . . hired [A-G Eagle] through the Thumbtack website to repair the roof, after reviewing . . . Thumbtack's warranty policy," App. AA10 ¶ 15, the Ahmad Williams Declaration contradicted the Complaint by asserting that he "never personally used the Thumbtack platform or directed another to do so." App. AA116 ¶ 4. Williams' wife claimed that her husband never authorized her to accept either Thumbtack's

Terms of Use or its arbitration clause, and that she never authorized any third party to accept Thumbtack's Terms of Use.   App. AA118 ¶¶ 3-6.  She also claimed that she could not remember seeing hyperlinks to Thumbtack's Terms of Use or receiving an e-mail regarding the November 2022 TOU, and she denied understanding her obligations associated with using the Thumbtack platform.   App. AA118 ¶¶ 3-6.   In short, she flatly denied Thumbtack's assertions regarding the November 2022 TOU, and contradicted some of Williams' Complaint allegations.  Most importantly, the Williams Declarations denied that they agreed to the Thumbtack Terms of Use, even though the Complaint alleged that "A binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms . . . ."  App. AA20 ¶ 37.

On September 4, 2025, four days before Thumbtack's deadline to timely reply to Williams' Opposition as instructed in the district court's September 2 Order, and before Thumbtack had any opportunity to oppose the request for discovery that Williams embedded in his Opposition, the district court denied Thumbtack's Motion to Compel Arbitration and ordered the parties to engage in discovery.  App. AA4.

The district court denied Thumbtack's Motion to Compel Arbitration after nominally applying a summary judgment standard. App. AA5. The district court held that there were "several disputed facts," but did not provide any explanation or evidence of analysis on whether such disputes were "genuine," or whether they concerned "material facts." App. AA5-6. In turn, the district court did not find that any of the issues of "disputed fact" were genuine disputes as to any material facts. It further held that the Ahmad Williams Declaration contradicted the Complaint. App. AA6. On September 11, 2025, Thumbtack filed its Notice of Appeal. App. AA1.

## III. Ruling Presented for Review

Thumbtack now appeals the district court's Order denying its Motion to Compel Arbitration and ordering discovery (the "Order"). App. AA1.

## SUMMARY OF ARGUMENT

The district court made procedural and substantive errors in denying Thumbtack's Motion to Compel Arbitration.

The district court made two substantive errors. *First* on substance, the district court erred in denying the Motion to Compel Arbitration. If it had properly applied the Rule 56 standard, the district court would have held that there were no genuine disputes as to any material fact.

Williams raised "disputes," but they were not genuine disputes. Instead, they were flat contradictions to the facts that Thumbtack presented, or that he, himself, had pled. These contradictions were uncorroborated and unexplained. For instance, Williams disputed his own admission (from his Complaint) that a binding contract was formed when he agreed to Thumbtack's terms of service. As another example, Williams disputed the fact (again in the Complaint) that he relied on Thumbtack's warranty (which references the Terms of Use) when he used Thumbtack to hire A-G Eagle. He even disputed (yet again contradicting the Complaint) that he had ever used Thumbtack.

Even if he had raised genuine disputes, they did not concern material facts—as they do not negate the binding nature of the November 2022 TOU, the scope of the arbitration provision, or anything else necessary to decide the Motion in Thumbtack's favor.

The *second* substantive error the district court made was ordering discovery. Parties opposing a motion to compel are not entitled to discovery. Like a summary judgment motion, a party opposing arbitration is only entitled to discovery when they make a preliminary showing that discovery may reveal genuine disputes of material fact. In this case, the existing record,

which included the Complaint's assertion that Williams agreed to a contract, was sufficient to grant the Motion to Compel Arbitration.

On procedure, the district court also made two errors independently warranting remand. *First* on procedure, the district court failed to determine whether there was a genuine dispute as to any material fact regarding Thumbtack's Motion to Compel Arbitration. Though the district court professed to apply the Rule 56 standard when assessing the Motion to Compel Arbitration, it neither assessed whether Williams' disputes were "genuine," nor whether such disputes concerned "material facts."

The record shows that the district court found only "disputed facts" and "genuine issues of fact" but it did not find that those disputed issues of fact were genuine disputes as to any material facts, as would be the 56 standard. Further, the only "dispute" that the district court identified was actually a contradiction between Williams' Complaint and his own Declaration in support of his Opposition to the Motion to Compel Arbitration. But self-serving and manufactured disputes that a party creates in his own filings are not "disputes" between parties and are certainly not "disputes" sufficient to meet the Rule 56 standard.

The **second** procedural error was that the district court improperly decided the Motion to Compel Arbitration without giving Thumbtack an opportunity to respond to the new facts Williams raised in his Opposition. In determining that the Complaint and documents relied upon in the Complaint were insufficient to decide the Motion to Compel Arbitration under a Rule 12(b)(6) standard, the district court considered documents outside the pleadings, such as the declarations submitted by Thumbtack and Williams, which caused it to analyze the Motion to Compel Arbitration under a Rule 56 standard. This procedure mirrors conversion of a Rule 12 motion to dismiss into a Rule 56 summary judgment motion. When a court makes such a conversion, it must afford "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the motion." *See* Fed. R. Civ. P. 12(d).

Thumbtack received no such opportunity to reply to the Opposition—or to even respond to Williams' request for discovery. When Williams raised new facts in the Opposition, the district court stated, "Thumbtack, Inc. may timely reply compliant with our governing Policies." *See* App. AA120 ¶ 2. But the district court denied the Motion to Compel Arbitration several days before the reply would have been due. Specifically, the district court's rules

permit filing a reply within seven days of Williams' opposition, but the district court denied Thumbtack's Motion within three days. To the extent that this was a mere operation of the district court's rules, those rules improperly abridge the application of the Rule 56 standard. If the district court chooses to convert a motion to compel arbitration from a Rule 12(b)(6) standard to the Rule 56 standard, it must observe the requirements of Rule 12(d).

## ARGUMENT

### I. Legal Standards

#### A. Standard of Review

This Court has plenary authority over a district court's order granting or denying a motion to compel arbitration. *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017). This Court should apply the same standard that governed in the district court. *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F .3d 764, 772 (3d Cir. 2013); *Singh v. Uber Techs Inc.*, 939 F.3d 210, 217 (3d Cir. 2019). In this case, the Rule 56 summary judgment standard governed in the district court, so this Court must apply that standard here. *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012).

Appeals arguing that there was a premature order entered on a Rule 56 motion apply an abuse of discretion standard. *St. Surin v. V.I. Daily News*, 21 F.3d 1309, 1313 (3d Cir. 1994).

### 1. Application of Rule 56 to Determine a Motion to Compel Arbitration

Where the pleadings and papers do not, on their face, establish a right to arbitrate, courts apply the Rule 56 summary judgment standard to a motion to compel arbitration. *Guidotti*, 716 F.3d at 772, 774–76. Accordingly, when the court applies that standard, the motion to compel arbitration should be granted if there is no genuine dispute as to any material fact. *Id.*

To conduct a Rule 56 analysis, the Court must: (1) determine whether a genuine dispute concerns a "material fact;" and (2) assess whether there is a "genuine dispute" over that material fact. Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material facts,' [and] disputes are 'genuine' if evidence exists" to corroborate the disputes. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

The non-movant, who asserts that there is a genuine dispute as to a material fact "must support that assertion by 'citing to particular parts of . . .

the record.'" *Guidotti*, 716 F.3d at 772 (quoting Fed. R. Civ. P. 56(c)(1)(A)). To overcome a properly supported motion under Rule 56, the non-movant must "point to concrete evidence." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

A party may not, however, create genuine disputes of material fact through "sham affidavits." The "sham affidavit" doctrine allows courts to disregard an affidavit under the summary judgment standard if the affidavit contradicts the affiant's prior statements. *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). "A party may not create a material issue of fact . . . by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) (quoting *Baer*, 392 F.3d at 624). The court must disregard a sham affidavit when the affidavit is "'entirely unsupported by the record and directly contrary to [other relevant] testimony,' or if it's 'clear' the affidavit was offered 'solely' to defeat summary judgment." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 392 (3d Cir. 2017) (quoting *Jiminez*, 503 F.3d at 253–24).

## 2. Parties Are Entitled to Respond to New Facts Raised in an Opposition

A district court must apply a summary judgment standard when adjudicating a motion to compel arbitration, instead of the Rule 12(b)(6) standard, if it considers facts and evidence outside the complaint. *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 248–49 (3d Cir. 2025). This procedure "mirrors the process provided by Rule 12(d) for converting a motion to dismiss to a motion for summary judgment." *Guidotti*, 716 F.3d at 775 n.6. Rule 12(d) provides that when "matters outside the pleadings are presented to" and considered by the court "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Once the summary judgment standard applies, the burden shifts "in accordance with the requirements of Rule 56" to demonstrate that "there exists no genuine issue as to any material fact." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1366 (3d ed. 2025). In turn, the movant must demonstrate that genuine disputes of material fact preclude summary judgment.

A reply brief is the appropriate vehicle to "address new materials raised in opposition papers so as to avoid giving unfair advantage to the

answering party." *Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000); *P.B. Burke Corp. v. United States*, 277 F.3d 1346, 1356 (Fed. Cir. 2002) (trial court's consideration of "factual argument" in summary judgment reply brief was warranted "to rebut factual assertions" made in the opposition brief); *see also Spriggs v. City of Harrisburg*, 679 F. Supp. 3d 144, 155 n.3 (M.D. Pa. 2023) ("The purpose of a reply brief is to respond to arguments raised in an opposition brief."). Under Rule 56, the movant may use the reply brief to show that the purported disputes of fact a non-movant identifies in its opposition are insufficient to defeat summary judgment. *See Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 716–17 (D.N.J. 2001) (describing a summary judgment reply brief as a "fair response to the [new] assertions" made in an affidavit submitted in an opposition brief); *Smith v. Johnson*, 862 F. Supp. 1287, 1289 (M.D. Pa. 1994) ("[A] movant should not be expected to anticipate (and therefore provide a reply and documentation for) every argument or factual assertion made by the" non-movant in opposition to the motion.).

**II. Analysis**

## A. There Are No Genuine Disputes of Material Fact that Preclude Compelling Arbitration.

The district court erred in finding that, under a Rule 56 standard, there is a genuine dispute of material fact that precludes arbitration of Williams' claims. The Complaint and Thumbtack's Motion to Compel Arbitration set forth undisputed evidence that (1) Williams used a Thumbtack account to hire A-G Eagle; (2) Williams agreed to Thumbtack's Terms of Use; (3) Williams' use of the Thumbtack platform was subject to an agreement to arbitrate essentially all disputes with Thumbtack; and (4) Williams' claims fall within the scope of the arbitration agreement. *See* App. AA9 ¶8, AA10 ¶ 15, AA20 ¶ 37.

Williams' Opposition did not create a genuine dispute as to these facts. The Williams Declarations in support of his Opposition should be disregarded under the sham affidavit doctrine. And even if considered, the sham affidavits did not create a genuine issue of material fact.

### 1. The Court Must Disregard the Williams Declarations under the Sham Affidavit Doctrine.

The district court erred in failing to apply the sham affidavit doctrine to strike the Williams Declarations. The Williams Declarations, despite being declarations of Plaintiff-Appellee and his wife, contradict the

Complaint, are unsupported by corroborating evidence, and appear only to have been submitted to inject non-existent issues of fact to defeat the Motion to Compel Arbitration. Williams makes the following admissions in his Complaint:

- "[Williams][4] retained [A-G Eagle] through Thumbtack..." App. AA9 ¶ 8.

- "[Williams] hired [A-G Eagle] through the Thumbtack website to repair the roof, after reviewing the contractor's insurance and Thumbtack's warranty policy." App. AA10 ¶ 15.

- "A binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms by selecting and hiring a contractor through their interface." App. AA20 ¶ 37.

The foregoing statements are all binding, judicial admissions. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 502 n.6 (3d Cir. 2014) ("A fact asserted in a pleading, which is both unequivocal and which would normally require evidentiary proof, constitutes a judicial admission"). "Judicial admissions are binding for the purpose of the case in which the admissions are made including appeals." *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1962). Indeed, Thumbtack customers cannot use the

---

[4] The Complaint uses the term Plaintiff without defining it. At the time Ahmad Williams filed his Complaint and Thumbtack moved to compel arbitration, Ahmad Williams was the only named Plaintiff. Following this appeal, Williams sought leave to add his wife Malaika as a Plaintiff.

Thumbtack website to message, let alone hire, a professional without creating an account and agreeing to Thumbtack's Terms of Use. App. AA56 ¶ 4. It is therefore undisputed that Williams used a Thumbtack account to hire A-G Eagle, *see* App. AA56 ¶ 4; App. AA9 ¶ 8, and he agreed to be bound by Thumbtack's Terms of Use in doing so. App. AA20 ¶ 37; App. AA56-57 ¶¶ 4–6)).

To conjure disputes of fact, Williams attached his own declaration (the "Ahmad Williams Declaration") and one from his wife (the "Malaika Williams Declaration") (collectively, the "Williams Declarations") to his Opposition. *See* App. AA115; App. AA117. But the Ahmad Williams Declaration directly contradicts the above-cited judicial admissions in the Complaint. In the Ahmad Williams Declaration, he avers that he "never personally used the Thumbtack platform or directed another to do so." App. AA116 ¶ 4. That contradicts his admission that he personally used the Thumbtack platform. *See* App. AA9 ¶ 8, AA10 ¶ 15, AA20 ¶ 37. Williams provided no plausible explanation as to why or how he could "retain [A-G Eagle] through Thumbtack" *see* App. AA9 ¶ 8 and "hire [A-G Eagle] through the Thumbtack website" App. AA10 ¶ 15, without "personally us[ing] the Thumbtack platform or direct[ing] another to do so" App. AA116 ¶ 4.

Williams did not explain the discrepancy because he cannot explain this: if Williams did not use the Thumbtack platform and agree to the Terms of Use, he could not have hired A-G Eagle through Thumbtack, and he would have no claim against Thumbtack. App. AA 56 ¶ 4.

The Malakia Williams Declaration fares no better. For one, it suggests—for the first time and contrary to the Complaint—that the account was hers, not her husband's. App. AA118 ¶¶ 3-6. It also asserts that she, not he, was in control of the account decisions.

For example, Mrs. Williams broadly declares that she was "never informed, in plain or conspicuous language, that using the Thumbtack platform would require [her] to submit to binding arbitration." App. AA118 ¶ 6. Through the declaration of Ashlee Atkinson, Lead Case Manager on the Thumbtack Trust and Safety Team, Thumbtack established that (1) Thumbtack sent Mrs. Williams an email on October 6, 2022 that included a hyperlink to Thumbtack's November 2022 TOU and informed users that continued use of the platform constituted acceptance of the TOU, *see* App. AA57-58 ¶¶ 10–12 and (2) Malakia Williams continued using the Thumbtack platform after October 6, 2022. *See* App. AA57 ¶ 9. This Court need not consider Mrs. Williams' blanket, self-serving denial when it is contrary to

the record. *Daubert*, 861 F.3d at 392 (district court properly disregarded affidavit that "flatly contradicted" sworn statements).

The Malaika Williams Declaration also denies that she ever agreed to the Terms of Use. App. AA118 ¶¶ 3-8. But that contradicts the assertion in the Complaint that "A binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms by selecting and hiring a contractor through their interface." App. AA20 ¶ 37. Like her husband, Malaika Williams fails to explain the discrepancy between her declaration and the Complaint, because she cannot do so. If she never agreed to the Terms of Use, she never could have signed up for a Thumbtack account, and thus never could have hired A-G Eagle. There would be no case.

The two declarations, devoid of corroboration or explanation for their contradictory nature, should have been disputed. This Court must disregard both conclusory and self-serving declarations. *See In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006) (disregarding sham affidavit submitted in a "scheme to provide sufficient facts to survive a summary judgment motion").

The Williams Declarations tried to invent a dispute by contradicting the Complaint to dispute contract formation. But Plaintiff disclaiming his own Complaint (and enlisting his wife to aid him) is the exact kind of malign behavior that the sham affidavit doctrine is designed to protect. *Paladino v. Newsome,* 885 F.3d 203, 208 (3d Cir. 2018) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment); *Dicent v. Kaplan Univ.*, 758 F. App'x 311, 312–14 (3d Cir. 2019) (self-serving affidavit from a plaintiff contending she was "unaware" of the arbitration agreement was insufficient to "save her from her agreement to arbitrate"); *Daubert*, 861 F.3d at 391–92 (describing that a district court may disregard a sham affidavit "at summary judgment in deciding if a genuine, material factual dispute exists"); *Jiminez,* 503 F.3d at 252 ("It is [the summary-judgment standard's] use of the term "genuine issue," rather than any issue of fact, that implicitly demonstrates the necessity of the sham affidavit doctrine as a means of sorting the wheat from the chaff.").

Because both the Ahmad Williams Declaration and the Malaika Williams Declaration are unsupported, contradict the Complaint's express admissions, and have no explanation for the contradiction, the district court erred in not applying the sham affidavit doctrine to disregard the Williams

Declarations. This Court, then, should apply the sham affidavit doctrine and disregard all statements set forth in the Williams Declarations.

## 2. Even if both Williams Declarations Are Considered, there Is still No Genuine Dispute of Material Fact.

Thumbtack's Motion to Compel Arbitration does not rely on disregarding the Ahmad Williams Declaration and disregarding the Malaika Williams Declaration. Even if considered, the Williams Declarations do not establish genuine disputes as to any material facts concerning contract formation.

To prevail on its Motion to Compel Arbitration, Thumbtack had to establish that (1) an arbitration agreement was validly formed; and (2) that it covers the claims at issue. *Gov't Emps. Ins. Co. v. Mount Prospect Ctr., P.A.*, 98 F. 4th 463, 470 (3d Cir. 2024). Courts "need only 'engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of that agreement.'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (quoting *PaineWebber v. Harmann*, 921 F.3d 507, 511 (3d Cir. 1990)). The Williams Declarations do not meaningfully contest the existence of a valid arbitration agreement.

### a. The Court Did Not Analyze Whether any Disputes Were Genuine, or if they Concerned Material Facts

As a preliminary matter, the district court did not engage in this analysis whatsoever. The Order denying the Motion to Compel Arbitration recognized "disputes of fact," but no "genuine" disputes of "material fact." App. AA5-6. And while the Order said that it found "genuine issues of fact regarding the validity of an arbitration agreement," it did not explain what those issues were, what the facts were, whether the facts were material to the validity of the arbitration agreement, or explain how it reached a conclusion that the issues were in fact, genuine disputes.

The district court should not have allowed discovery because Williams disputed that there was an agreement (especially after admitting it in the Complaint). Courts are not obliged to prolong cases to resolve disputes that are either immaterial or specious.

> By its very terms, [the Rule 56] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no genuine issue of material fact.

*Anderson,* 477 U.S. at 242. In this case, and as described below, a close examination of the putative disputes demonstrates that failure to analyze

their materiality or genuineness allowed the district court to improperly deny the Motion and order discovery.

### b. The Disputes Are Neither Genuine, Nor Concerning Material Facts.

Williams' Opposition did not present specific evidence against the Complaint's assertion that "[a] binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms." App. AA20 ¶ 37. Even if he had, it would have been "Ahmad Williams v. Ahmad Williams," and impermissible. *Dicent*, 758 F. App'x at 312–14 (finding that a self-serving affidavit from a plaintiff contending that she was "unaware" of the arbitration agreement was insufficient to "save her from her obligation to arbitrate"). Thumbtack's November 2022 TOU was the operative Terms of Use in 2023 when Williams had the roof repaired. App. AA 57 ¶ 9.

Since he could not bring forth evidence to explain or even contradict his admission that "a binding agreement was formed," Williams submitted two contradictory, conclusory, and self-serving declarations to conjure a dispute. *See* App. AA115-119. As explained above, the district court should have disregarded both of the Williams Declarations as sham affidavits.

But even if those Declarations were properly considered, they do not create "genuine" disputes of "material" fact. On the most generous reading, the Ahmad Williams Declaration establishes that *he* never communicated with Thumbtack, and *he* never authorized his wife to waive any claim of his. But his wife's actions bind him under Pennsylvania law. *See Caimano v. H&R Block*, Civil Action No. 23-3272, 2024 WL 3295589, at *13-15 (E.D. Pa. July 3, 2024) (applying Pennsylvania law to hold that an arbitration agreement signed by one spouse binds a spouse who did not sign the agreement, when the latter benefitted from the contract). Any rule to the contrary would allow all contracts, like mortgages, car loans, and any service contract for a home, to become unenforceable because one spouse signed, and the other simply reaped the benefits while breaking every covenant in the agreement. And his assertion that he "never personally used the Thumbtack platform," (App. AA116 ¶ 4), flies directly in the face of the Complaint's assertion that he "hired [A-G Eagle] through the Thumbtack website to repair the roof, after reviewing . . . Thumbtack's warranty policy." App. AA10 ¶ 15. So, his own disputes are neither material, nor genuine.

The Malaika Williams Declaration similarly fails to raise "genuine" disputes as to any "material fact." She says that she never received,

reviewed, or opened any e-mail from Thumbtack in 2022.  App. AA116 ¶ 5.

Though failure to receive such an email would be a material fact, whether

she received the email is not a genuine dispute.  "All Thumbtack users—

including Williams" were sent the TOU update e-mail on October 6, 2022.

App. AA57 ¶ 10.  Pennsylvania courts presume that arbitration agreements

sent through email are delivered absent some notification that the email was

undeliverable.  *Stephenson v. AT&T Servs., Inc.*, Civil Action No. 21-07092021

WL 3603322, at *5 (E.D. Pa. Aug. 13, 2021) (collecting other Pennsylvania

district court cases and citing *Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013);

*Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005);

*Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000)) (granting a motion to

compel arbitration despite the plaintiff's contention it did not receive email

with terms).  Accordingly, "[o]nce this presumption is established, the party

alleging that it did not receive the [email] has the burden of establishing

such, and merely asserting that the [email] was not received, without

corroboration, is insufficient to overcome the presumption of receipt." *Id.*

(quoting *Geise v. Nationwide Life & Annuity Co. of Am.*, 939 A.2d 409, 423 (Pa.

Super. 2007)). Malaika Williams did not say that she was locked out of her

email, or that it was otherwise inaccessible to her. Therefore, it must be presumed that she received it—whether she opened it, is her choice.

Mrs. Williams' flat refusal of receipt contains no support, and is the kind of self-serving, conclusory statement that is insufficient to defeat a motion under Rule 56. None of her other disputes—about authorization from her husband, about her understanding of the Terms of Use, or her understanding of rights under Pennsylvania law—are material to the question of whether she had a Thumbtack account subject to an agreement to arbitrate. *See* 21 Pa. Stat. § 82 (acknowledging women as autonomous legal actors with full contracting capacity); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) (the objective standard of contract formation makes allegations of ignorance of one's rights under the law immaterial to the determination of whether there is an enforceable arbitration agreement).

Ultimately, the Complaint asserted that, under Williams' understanding, "A binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms by selecting and hiring a contractor through their interface." App. AA20 ¶ 39. No amount of sophistry in Opposition can overcome the statement that Williams made in his own Complaint.

### 3. The November 2022 TOU Includes an Enforceable Arbitration Agreement.

Thumbtack presented undisputed evidence that establishes a valid arbitration agreement through the November 2022 TOU. *See* App. AA49-51. As a preliminary matter, Williams pled that he had a binding agreement with Thumbtack after accepting the platform's service terms. App. AA20 ¶ 37. It would be difficult for Williams to have drafted a more direct admission that a contract was formed pursuant to Thumbtack's Terms of Use.

Even without that admission in the Complaint, on October 6, 2022, Thumbtack had e-mailed all users a message with hyperlinks that linked directly to the November 2022 TOU, to inform them of the November 2022 TOU and that "[by] continuing to use Thumbtack after November 6th, you are agreeing to the new Terms of Use."[5] App. AA57 ¶¶ 10-11. Thumbtack sent this e-mail to Williams. App. AA57 ¶ 10.

Williams continued to use the Thumbtack platform after October 6, 2022. App. AA57 ¶ 6. Indeed, Williams used Thumbtack's platform to hire

---

[5] This excerpt is one of three places where the November 2022 TOU were hyperlinked and in blue in the October 6, 2022 email. App. AA58 ¶ 11.

A-G Eagle in August 2023 when the November 2022 TOU was in effect. App. AA57 ¶ 6. Williams never opted out of the November 2022 TOU arbitration provision. App. AA58 ¶ 13. These circumstances are sufficient to find that the November 2022 TOU includes a binding enforceable agreement to arbitrate between Williams and Thumbtack. *See generally Hoffman v. Compassus*, Civil Action No. 18-0776, 2019 WL 1791413, at *7 (E.D. Pa. Apr. 23, 2019) (collecting cases where receipt of agreement, alone, constituted sufficient notice).

The October 6, 2022 email provided conspicuous notice regarding the arbitration provisions and created an enforceable arbitration agreement as a matter law. As described above, there are blue hyperlinks to the November 2022 TOU at multiple places in the October 6, 2022 email. *See* App. AA58 ¶ 11. In turn, the November 2022 TOU included an all-caps bold warning about arbitration, with hyperlinks to the arbitration provisions in the November 2022 TOU. R.12-1 at 1. It was clearly and conspicuously provided, had either Williams cared to look. Accordingly, the district court erred in finding that a genuine dispute of material fact precluded compelling arbitration.

Thumbtack set forth sufficient evidence to establish that the November 2022 TOU is a binding and enforceable arbitration agreement. Williams presented no evidence to the contrary. Therefore, this Court must remand with instructions that Williams and Thumbtack entered into a valid arbitration agreement.

### 4. This Dispute Falls within the Scope of the Arbitration Agreement.

The district court's Order did not address whether the underlying dispute falls within the scope of the arbitration agreement between Thumbtack and Williams. *See* App. AA4. Thumbtack briefly addresses this point to assure the Court that the November 2022 TOU includes a broad agreement to arbitrate all disputes, except for certain intellectual property and small court claims.

The Arbitration and Class Waiver Section in the November 2022 TOU is as broad as can be, intending to cover "any and all disputes between you and Thumbtack, including but not limited to claims arising out of or relating to any aspect of the relationship between you and Thumbtack, whether based in contract, tort statute, fraud, misrepresentation or any legal theory." App. AA85.

In this lawsuit, Williams' Complaint alleges Thumbtack is liable because "A binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms by selecting and hiring a contractor through their interface" unquestionably "arise[s] out of or relat[es] to . . . the relationship between [Williams] and Thumbtack," and includes "claims arising out of or relating to [the TOUs] .... the parties' relationship with each other, and/or [Williams'] use of the [Thumbtack] platform." *See* App. AA20 ¶ 37; App. AA85. It fits well within the arbitration provision.

Williams had an opportunity to opt out of the arbitration provision, but he did not do so. App. AA58 ¶ 13. Williams also did not attempt to resolve this dispute with Thumbtack before filing the lawsuit. App. AA59 ¶ 20–22. Instead, Williams filed suit and alleged that Thumbtack breached certain legal obligations, including alleged contractual obligations, by allowing A-G Eagle to advertise its services on Thumbtack's platform. *See* App. AA20 ¶ 37.

Therefore, this dispute is covered by the arbitration agreement, and this Court must remand with instructions to arbitrate all claims.

**B. The District Court Erred in Ordering Discovery.**

Particularly in a case like this, where there is no genuine dispute of any material fact regarding arbitration, the district court erred in imposing discovery obligations on the parties. While the district court rightly cited *Guidotti* and *Young v. Experian Info. Solutions, Inc.*, 119 F.4th 314 (3d Cir. 2024), the district court erred in its application of those cases. Specifically, the district court's allusion to *Young* was not followed by faithful application of its holding. *Young* explains that

> *Guidotti*'s call for limited discovery into arbitrability is best understood as being itself limited. It should be read as encouraging factual discovery when such discovery is warranted, which will often be the case but not always. In the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel.

*Young*, 119 F.4th at 319–20. Discovery on motions to compel arbitration is not automatic, as non-movants are not entitled to discovery where they fail to demonstrate how discovery would have assisted them in opposing the motion to compel arbitration. *Wolff v. Westwood Management, LLC*, 558 F.3d 517, 521 (D.C. Cir. 2009); *see also Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894–95 (5th Cir. 2013) (per curiam) (similar); *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1315 (11th Cir. 2005) (per curiam) (similar). In this case,

as noted above, Williams pled that there was a binding agreement and he had accepted the Terms of Use. App. AA20 ¶ 37. Williams' subsequent backtracking—without new facts or an explanation as to why he had such a glaring contradiction—did not create a genuine dispute or warrant discovery.

Indeed, the district court's Order said that part of the point of the discovery was to untangle the Williams v. Williams web of contradictions. App. AA6. But that gets it backwards: Williams does not get to untangle anything unless he shows that it is necessary to do so. Williams could not justify the discrepancy between his Complaint (in which he admitted that a "binding agreement was formed between Thumbtack and Plaintiff when he agreed to the platform's service terms" because he felt it gave him a cause of action against Thumbtack) and the Williams Declarations (in which he says he has never used Thumbtack, and his wife suggests she got a Thumbtack account without ever agreeing to the Terms of Use, because he does not want to go to arbitration).

As it stands, the district court's procedure has imposed far more discovery obligations on Thumbtack than the parties bargained for through the "binding agreement" Williams acknowledged in his Complaint. *See*

*Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023) (allowing discovery that the parties "contracted to avoid through arbitration" would strip the arbitration agreement of its "asserted benefits").

A procedure such as the one in this case—allowing discovery on a motion to compel arbitration in the face of nothing more than a conclusory, self-serving affidavit—would be the exception that swallowed the arbitration rule. The main thing that parties get out of arbitration is limited discovery. That benefit would be inherently limited if one party to an arbitration agreement can get civil discovery simply by disclaiming the agreement and their Complaint which acknowledges it.

Williams' reaction to his discovery windfall demonstrates the specific problems with setting the bar to discovery so low. He immediately propounded document requests, such as the following:

> All documents, including associated metadata, relating to any non-privileged internal correspondence, communications, or policies concerning the implementation, execution, errors, and/or legal expectations of Defendant Thumbtack's 2016, 2018, and 2022 Terms of Use and arbitration clauses.

App. AA121. The request is self-evidently irrelevant to whether he or Malaika Williams agreed to the Thumbtack Terms of Use. And, even if the

district court ultimately quashes that request, the burden of responding and resolving objections in civil litigation is far different from the burden of doing so in arbitration. The discovery order, particularly one entered without a chance to respond, as explained below, is a severe infringement on Thumbtack's contractual right to arbitrate.

### C. Thumbtack Should Have Been Afforded an Opportunity to Respond to the Facts Williams Raised for the First Time in his Opposition to the Motion to Compel Arbitration.

As described above, the district court got the substance wrong: There was no genuine dispute of material fact, and Plaintiff was not entitled to discovery.

The district court reached those errors, in part, because it applied a flawed process and did not analyze the materiality or genuineness of the disputed facts. Further, Williams' request for discovery was raised in the Opposition, and Thumbtack received no opportunity to respond to it in the first instance. Each of these oversights independently warrants remand.

Certainly, the district court would have analyzed the genuineness or materiality of any disputed facts, had Thumbtack been afforded the opportunity to reply to the Opposition. The entire analysis of "genuine dispute as to any material fact," presented in this brief, would have taken

place in the district court had the district court allowed it. The same goes for the request for discovery. In this way, the procedure, itself, was reversible error.

But rather than giving Thumbtack the opportunity to respond to the new facts that Williams raised in the Opposition, the district court denied the Motion to Compel Arbitration, after entering an order saying "Thumbtack, Inc. may timely reply compliant with our governing Policies." App. AA12.

As *Guidotti* instructed, choosing to analyze a motion to compel arbitration under Rule 56 mirrors the process of converting a Rule 12(b)(6) motion to a summary judgment motion under Rule 56. *Guidotti*, 716 F.3d at 775 n.6. One element of that conversion process is found in Rule 12(d), which provides that when "matters outside the pleadings are presented to" and considered by the court "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*.

Instead of affording Thumbtack an opportunity to file a reply brief, the district court entered its Order denying the Motion to Compel four days before it was due. The district court's standing rules prescribe that Thumbtack would have had seven days from the date of Williams

Opposition (September 1) to file a reply brief. On September 2, the district court entered an order inviting Thumbtack's reply. App. 120 ¶ 2. But it then incorrectly denied the Motion to Compel Arbitration on September 4, four days before the September 8 deadline to reply.

To compound the problem of not permitting a reply to the Opposition, the district court ordered discovery (a request Williams first raised in the Opposition) before Thumbtack could oppose that request. App. AA6 (denying Thumbtack's Motion three days after Williams filed his Opposition).

As an intuitive matter, allowing Thumbtack to respond would have been the only fair procedure. The facts and evidence that Williams presented in the Opposition did not exist when Thumbtack filed its Motion to Compel Arbitration. Williams conjured those "factual" assertions to contradict the (actually true) assertions he made in his Complaint regarding his acceptance of the Terms of Use and to avoid arbitration. Thumbtack had no opportunity to rebut those new facts before the district court ruled. Because Thumbtack, like any movant, cannot carry a burden on evidence that did not exist at the time of filing, the district court's premature ruling

deprived Thumbtack of the only procedural mechanism by which it could have opposed discovery or rebutted Williams' Opposition.

In a comparable procedural context, it is error for a district court to grant summary judgment based on arguments raised for the first time in reply, without providing the opposing party with a fair opportunity to respond. *See Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010) (fundamental fairness dictates notice and meaningful opportunity to respond when new arguments are raised in reply). Just as it is unfair for a court to grant summary judgment based on reply evidence and arguments that the non-movant had no opportunity to rebut, it is equally unfair for a court to deny a motion to compel arbitration based on a one-sided record containing new facts that the movant never had an opportunity to address.

The district court erred by denying Thumbtack a fair opportunity to "present all material" pertinent to its motion, Fed. R. Civ. P. 12(d), despite signaling its intention to do so. App. AA120 ¶ 2. When it said "[The court] will now turn to resolving the Motion to compel arbitration . . . mindful Thumbtack, Inc. may timely reply compliant with our governing policies," Thumbtack took that seriously. Thumbtack should have been given the chance to act accordingly.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's

September 4, 2025 Order.


November 24, 2025                        Respectfully submitted,


                                         */s/ Johanes Maliza*
                                         Johanes Maliza
                                         Benesch Friedlander Coplan & Aronoff
                                         127 Public Square, Suite 4900
                                         Cleveland, OH 44114
                                         (216) 363-1503
                                         jmaliza@beneschlaw.com

                                         Noelle B. Torrice
                                         Benesch Friedlander Coplan & Aronoff
                                         1313 North Market Street, Suite 1201
                                         Wilmington, DE 19801
                                         (302) 442-7056
                                         ntorrice@beneschlaw.com

                                         Meghan Golden
                                         71 South Wacker Drive
                                         Suite 1600
                                         Chicago, IL 60606
                                         (312) 624-6378
                                         mgolden@beneschlaw.com

                                         *Attorneys for Defendant Thumbtack Inc.*

## COMBINED CERTIFICATIONS

I hereby certify that this brief complies with the Federal and Local Rules in that it contains 9,892 words and was prepared in Microsoft Word and produced with a proportional serif 14-point font. I further certify that the text of the electronic brief is identical to the text in the paper copies. I further certify that the CrowdStrike Falcon Malware Scan program has been run on the electronic brief, and no virus was detected. I further certify that I am a member in good standing of the Bar of this Court.

*/s/ Johanes Maliza*
Johanes Maliza
Benesch Friedlander Coplan & Aronoff

No. 25-2785

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| THUMBTACK, INC., | Appeal from the United States District Court for the Eastern District of Pennsylvania |
| Defendant-Appellant, | |
| vs. | Case No. 25-CV-3541 |
| AHMAD WILLIAMS, | Honorable John F. Murphy, United States District Judge, Presiding. |
| Plaintiff-Appellee. | |

## NOTICE OF FILING AND PROOF OF SERVICE

TO: Ms. PATRICIA S. DODSZUWEIT, Clerk, Office of the Clerk, United States Court of Appeals for the Third Circuit, 21400 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1790

Mr. AHMAD WILLIAMS, 2639 Oakford Street, Philadelphia, PA 19146

Ms. WENDY D. TESTA, Wilson Elser 2001 Market Street, Two Commerce Square, Suite 3100, Philadelphia, PA 19103

PLEASE TAKE NOTICE that on November 24, 2025, the undersigned attorney filed Defendant-Appellant's Appellant's Brief with the Clerk of the United States Court of Appeals for the Third Circuit, and served a copy thereof upon all counsel of record, by electronic filing. Parties registered

with ECF will receive notice of the filing. All other parties will receive

this via First Class U.S. Mail.

 November 24, 2025                        Respectfully submitted,


*/s/ Johanes Maliza*
Johanes Maliza
Benesch Friedlander Coplan & Aronoff
127 Public Square, Suite 4900
Cleveland, OH 44114
(216) 363-1503
jmaliza@beneschlaw.com

*Attorneys for Defendant Thumbtack Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Case No. 25-2785

---

THUMBTACK INC.,

Defendant – Appellant,

v.

AHMAD WILLIAMS,

Plaintiff – Appellee

---

On Appeal from Order of the
United States District Court, Eastern District of Pennsylvania, 2:25-cv-3541
(Kearney J.)

---

**APPELLANT THUMBTACK, INC.'S APPENDIX**
**(Volume I, AA1-AA6)**

---

**Defendant– Appellant**
By Its Attorneys,
Benesch, Friedlander, Coplan &
Aronoff LLP

| | | |
|---|---|---|
| Johanes Maliza | Noelle Torrice | Meghan Golden |
| 127 Public Square | 1313 North Market Street | 71 South Wacker Drive |
| Suite 4900 | Suite 1201 | Suite 1600 |
| Cleveland, OH 44144 | Wilmington, DE 19801 | Chicago, IL 60606 |
| (216) 363-1503 | (302) 442 7056 | (312) 624-6378 |
| jmaliza@beneschlaw.com | ntorrice@beneschlaw.com | mgolden@beneschlaw.com |

# TABLE OF CONTENTS

***Thumbtack V. Williams*, 25-2785 (Appellant's Appendix Vol I)**

Appeal from the Eastern District of Pennsylvania, 2:25-cv-3541

| Document | District Court Docket Number | Page Number |
|---|---|---|
| Notice of Appeal | Dkt. 27 | AA1 |
| Order Denying Motion to Compel Arbitration | Dkt. 20 | AA4 |

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AHMAD WILLIAMS,<br><br>                    Plaintiff,<br>     v.<br><br>A-G EAGLE CONSTRUCTION LLC and<br>THUMBTACK INC.,<br><br>                    Defendants. | Civil Action No. 2:25-cv-03541-JFM |

### <u>DEFENDANT THUMBTACK, INC.'S NOTICE OF APPEAL</u>

Pursuant to Fed. R. App. P. 3(c)(1) and Fed. R. App. 4(a) Defendant Thumbtack, Inc. ("Thumbtack") hereby gives notice of its appeal to the United States Court of Appeals for the Third Circuit from this Court's Order dated September 4, 2025 denying without prejudice Thumbtack's Motion to Compel Arbitration and Stay Proceedings, and ordering discovery.  (Dkt. No. 20).  Appellants will be represented before the Third Circuit by Noelle B. Torrice and Johanes Maliza of Benesch Friedlander Coplan & Aronoff LLP.

*[Signature block on the following page.]*

Dated: September 11, 2025

Respectfully submitted,

/s/ Noelle B. Torrice
Noelle B. Torrice (PA No. 317928)
Benesch Friedlander Coplan & Aronoff LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
(302) 442-7056
ntorrice@beneschlaw.com

Johanes Maliza (*pro hac vice* forthcoming)
Benesch Friedlander Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
(216) 363-1503
jmaliza@beneschlaw.com

*Attorneys for Defendant Thumbtack, Inc.*

## CERTIFICATE OF SERVICE

I, Noelle B. Torrice, hereby certify that on this 11th day of September, 2025, I caused to be served true and correct copies of the foregoing to all counsel and parties of record via CM/ECF. Parties not registered to receive service via CM/ECF will receive copies via U.S. Mail at the addresses listed below.

Ahmad Williams
2639 Oakford Street
Philadelphia, PA 19146
Email: modwilliams86@gmail.com

*Pro Se Plaintiff*

Jason Barry Rojas
Wendy D. Testa
Wilson, Elser, Moskowitz,
  Edelman & Dicker LLP
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
Email: jason.rojas@wilsonelser.com
        wendy.testa@wilsonelser.com

*Attorneys for Defendant A-G Eagle Construction LLC*

/s/ Noelle B. Torrice
Noelle B. Torrice (PA No. 317928)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AHMAD WILLIAMS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-3541** |
| | : | |
| **THUMBTACK, INC., A-G EAGLE** | : | |
| **CONSTRUCTION LLC** | : | |

## <u>ORDER</u>

**AND NOW**, this 4th day of September 2025, upon considering Defendant Thumbtack, Inc.'s Motion to compel arbitration (ECF 12), Plaintiff's Response (ECF 16), and finding limited discovery is warranted into whether a valid agreement to arbitrate exists, it is **ORDERED** we:

1.    **DENY** Defendant's Motion to compel (ECF 12) without prejudice to renew based on the limited discovery permitted under this Order by no later than **October 13, 2025**, with a response due no later than **October 24, 2025**;[1]

2.    **GRANT** the parties leave for limited discovery defined below to be completed by **October 6, 2025** focusing on developing facts relating to a valid agreement to arbitrate allowing Plaintiff and Defendant Thumbtack, Inc. to:

   a.    Forthwith issue no more than five interrogatories under Rule 33 and no more than five document requests under Rule 34 to be timely and fulsomely answered compliant with the Federal Rules within five days of electronic mail in the same electronic mail manner;

   b.    Depose the Declarants for each party (ECF 12-3, ECF 16 at Attachments A and B) for no more than two hours limited to the validity of the arbitration agreement as well as whether Plaintiff hired E-A Eagle Construction LLC through a Thumbtack account as disputed in the parties' briefing (ECF 12, 16);

c.    Issue and obtain documents under no more than two third-party document

subpoenas consistent with Rule 45 mindful of the limited scope of this arbitration discovery; and,

3.    **DEFER** scheduling an initial trial conference and beginning discovery on other

issues until further Order as we resolve the pending Motion to dismiss by the co-Defendant (ECF

14) while reminding the parties and counsel of their obligations to retain all information relating

to a claim or defense.

KEARNEY, J.

---

[1] We are guided by the decisions of our Court of Appeals in *Guidotti v. Legal Helpers Debt Resolution, LLC.* 716 F.3d 764 (3d Cir. 2013) and *Young v. Experian Info. Solutions, Inc.*, 119 F.4th 314 (3d Cir. 2024). We treat motions to compel arbitration as either a motion to dismiss or a motion for summary judgment. Thumbtack, Inc. did not identify the applicable standard to be applied here. Mr. Williams asks for limited discovery on the validity of the arbitration agreement.

We apply a Rule 12(b)(6) motion to dismiss standard "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that ... a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Young*, 119 F.4th at 319 (quoting *Guidotti*, 716 F.3d at 776) (cleaned up). The motion to dismiss standard is inappropriate when either: (1) "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate"; or (2) the party opposing the motion to compel arbitration "has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (cleaned up). We apply a Rule 56 standard after a period of discovery on the question of arbitrability given Mr. and Mrs. Williams's sworn statements of not signing the arbitration beyond their intent. The question is whether Mr. or Mrs. Williams did not object to the arbitration obligation when afforded an opportunity to object and opt-out of the arbitration. We will later decide, as a matter of law, if Mr. Williams, using the Thumbtack account of his wife, is bound by the terms of the account he used regardless of whether he knew of the arbitration obligation.

2

Mr. Williams swears he never authorized his wife, Malaika, to accept or agree to Thumbtack's Terms of Use or arbitration clause or to waive his right to a jury trial, he never saw an email from Thumbtack (identified by Thumbtack's declarant Ashlee Atkinson as sent around October 6, 2022) sent to all users regarding the new Terms of Use for the Thumbtack platform, and never personally used the Thumbtack platform or directed another to do so. ECF 16 at 21 (citing the pagination provided by the CM/ECF docketing system). Malaika Williams swears her husband never authorized her to accept or agree to the Terms of Use or arbitration clause on the Thumbtack platform or waive his right to a jury, she never authorized anyone to accept or agree to such terms, she does not recall clear or conspicuous hyperlinks to Terms of Use or an arbitration agreement on the Thumbtack registration page when creating a Thumbtack account, never affirmative clicked on an "I agree" button, never received, reviewed or opened the Thumbtack email in 2022 notifying users of a change in Terms of Use or arbitration policies, and did not receive information, in plain or conspicuous language, of the requirement to submit to binding arbitration or waive her right to a jury. ECF 16 at 23–24.

We face several disputed facts including at least one created by Plaintiff's inconsistent representations in filings. Mr. Williams seems to represent two different things in sworn statements: he alleges he "retained [A-G Eagle Construction, LLC] through Thumbtack, relying on the platform's representations of reliability and contractor vetting" and "hired [A-G Eagle Construction, LLC] through the Thumbtack website to repair the roof …" (ECF 1 ¶¶ 8, 15). But he now, in opposition to Thumbtack's Motion to compel arbitration, represents he "never personally used the Thumbtack platform or directed another to do so." ECF 16 at 22, ¶ 4 (using the pagination assigned by the CM/ECF docketing system). We wonder how Mr. Williams represented to us on one hand he retained A-E Eagle Construction for roofing work through Thumbtack forming the basis of his claims against Thumbtack and on the other hand swears he "never personally used" Thumbtack. We expect these questions will be clarified in the limited discovery period.

We grant the parties leave to conduct limited discovery consistent with this Order finding genuine issues of fact regarding the validity of an arbitration agreement binding Mr. Williams and his inconsistent representations. *See e.g. Kirkham v. TaxAct, Inc.*, No. 24-1515, 2025 WL 914307, at *2 (3d Cir. Mar. 26, 2025) (citing *Guidotti* and *Young*). Thumbtack may renew its motion to compel arbitration after this discovery permitted today and later evaluated under the summary judgment standard.

We proceed in the interim by addressing A-G Eagle's pending Motion to dismiss. ECFs 14, 19. We defer an initial pretrial conference and setting trial obligations until we see which claims remain before us today.